**CAMERON COUNTY, et al., Appellants,**

v.

**Crox ALVARADO, et al., Appellees.**

No. 13–94–534–CV.

Court of Appeals of Texas,
Corpus Christi.

May 18, 1995.

Rehearing Overruled June 22, 1995.

J. Arnold Aguilar, Lisa M. Mount, Willette & Aguilar, Brownsville, Jack K. Smith, Dallas, for appellants.

Susan Anne Allen, Law Office of Windle Turley, Dallas, David R. Weiner, Law Offices of Windle Turley, P.C., Dallas, for appellees.

Before SEERDEN, C.J., and FEDERICO G. HINOJOSA, Jr. and CHAVEZ, JJ.

## OPINION

FEDERICO G. HINOJOSA, Jr., Justice.

Appellees brought suit against Cameron County, Sheriff's Deputies Arnold Flores and Lt. George Gavito, and others under Texas Civil Practice & Remedies Code § 71.001–.011 ("Wrongful Death Act"), § 71.021 ("Survival Act") and § 101.001 et seq. ("Tort Claims Act") in connection with a high-speed police chase. Appellants moved for summary judgment on the basis of official immunity. The trial court denied appellants' motion for summary judgment. By interlocutory appeal, appellants challenge the trial court's ruling. We affirm.

The present lawsuit arises from an automobile accident that occurred in Brownsville and which resulted in the deaths of Brenda Lee Alvarado and Maria De Jesus Alvarado, two passengers in a vehicle driven by Crox Alvarado. Three other passengers, Monica Arlene Alvarado, Sandra Vasquez, and Yasmine Alvarado, incurred injuries. Appellees, including the surviving passengers of the vehicle, next friends, and heirs at law of the two decedents, sued Jose B. Jimenez, Federal Signal Corporation, Rio–Radio Supply, Inc., and appellants. Federal Signal and Rio–Radio Supply manufactured and sold the light-bar and siren-speaker system installed in the sheriff's units driven by Officers Gavito and Flores.

The record reveals that, on June 4, 1989, a Cameron County Sheriff's Department dispatcher received a 9–1–1 call concerning a car theft. The officer then dispatched the information over the county's two-way radio system. Deputies Gavito and Flores, driving separate sheriff's units, acknowledged the dispatch and proceeded to the intersection of Highway 48 and Highway 511. Flores observed the suspect driving the described stolen Ford pick-up truck on Highway 48, activated his lights and siren, and attempted to stop the suspect. Before the suspect arrived at the intersection of Highway 48 and Highway 802, Gavito joined the pursuit. The suspect continued to drive at a high rate of speed and against traffic through a red light at the Highway 802 intersection. Flores, with Gavito following behind, came to a stop at the intersection because of traffic congestion, and the suspect increased the distance between him and the pursuing officers.

As he approached the intersection of Highway 48 and Price Road, Flores kept the suspect in sight but decreased his speed due to traffic congestion and because the chase was then occurring in a residential area. At the Price Road intersection, the suspect again ran a red light and collided with the vehicle driven by Alvarado. Alvarado and three passengers incurred injuries as a result of the accident, and two passengers died. Before Deputies Flores and Gavito arrived at the scene, the suspect abandoned the stolen vehicle and fled the scene. Police officers subsequently apprehended the suspect, identified as Jose Jimenez, on the roof of a house in a nearby neighborhood and arrested him. Criminal charges were brought against Jimenez, and he was convicted of two counts of first degree murder and sentenced to 100 years in prison.

Appellees thereafter brought suit against appellants Cameron County, Lt. Gavito and Deputy Flores. Appellees asserted claims against Cameron County for the county's own negligence. In addition, appellees alleged that appellants' violations of local and state traffic laws constituted negligence per se. Specifically, appellees alleged that appellants had failed to use emergency lights and/or sirens and had violated TEX.REV.CIV. STAT.ANN. art. 6701d, §§ 24, 75 and 124 (Vernon 1977 & Supp.1995). Appellees also alleged that appellants had failed to institute safe pursuit procedures, had failed to adequately train and instruct its employees in safe pursuit procedures, and had authorized the pursuit of Jimenez without reasonable justification. Appellees further alleged that Lt. Gavito and Deputy Flores had failed to terminate the chase in a timely fashion and that Lt. Gavito had failed to properly supervise the conduct of the case.

■ Appellants filed a joint motion for summary judgment.[1] Gavito and Flores asserted official or qualified immunity.[2] Cameron County asserted sovereign immunity based on its employees' official immunity. In their response to appellants' motion for summary judgment, appellees moved to strike the affidavits of David Salmon and John Sexton on the grounds that these affiants had failed to state whether the facts contained in their respective affidavits were true and correct and that their "belief" that appellants had acted in good faith was of no probative force at summary judgment. Appellees further asserted that material fact issues remained concerning whether the officers were acting in good faith. By order dated October 10, 1994, the trial court denied appellants' motion for summary judgment. By three points of error, appellants complain that the trial court erred by denying their joint motion for summary judgment.

■ Under Texas procedure, appeals are allowed only from final orders or judgments. *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 272 (Tex.1992); *North East Indep. Sch. Dist. v. Aldridge*, 400 S.W.2d 893, 895 (Tex.1966). Unless a statute specifically authorizes an interlocutory appeal, Texas appellate courts have jurisdiction only over final judgments. *Cherokee Water Co. v. Ross*, 698 S.W.2d 363, 365 (Tex.1985) (orig. proceeding); *Aldridge*, 400 S.W.2d at 895. TEX.CIV.PRAC. & REM. CODE ANN. § 51.014 (Vernon Supp.1995) specifically allows appeal of various interlocutory orders, including an order that "(5) denies a motion for summary judgment that is based on an assertion of immunity by an individual who is an officer or employee of the state or a political subdivision of the state[.]" The supreme court has held that § 51.014(5) provides that the denial of a summary judgment motion may be appealed if it "is *based on* an assertion of" qualified immunity. *City of Houston v. Kilburn*, 849 S.W.2d 810, 812 (Tex.1993) (per curiam) (emphasis in original); *City of Mission v. Ramirez*, 865 S.W.2d 579, 581–82 (Tex.App.—Corpus Christi 1993, no writ).

■ Under the Texas Tort Claims Act, a governmental entity may bear liability for its employees' torts if, among other things, "the employee would be personally liable to the claimant according to Texas law...." TEX.CIV.PRAC. & REM.CODE ANN. § 101.021(1) (Vernon 1986). Conversely, if qualified immunity protects the employee from liability, then the governmental entity's sovereign immunity remains intact. *Kilburn*, 849 S.W.2d at 812. *See, e.g., Carpenter v. Barner*, 797 S.W.2d 99, 102 (Tex.App.—Waco 1990, writ denied); *Wyse v. Department of Pub. Safety*, 733 S.W.2d 224, 227–28 (Tex.App.—Waco 1986, writ ref'd n.r.e.). To that extent, a sovereign immunity claim may be "based on" an individual's assertion of qualified immunity and falls within the scope of § 51.014(5). *Kilburn*, 849 S.W.2d at 812; *Ramirez*, 865 S.W.2d at 582.

■ We address the trial court's denial of summary judgment of the deputies' qualified immunity defense and the County's sovereign immunity defense based on the deputies' qualified immunity claim. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 51.014(5) (Vernon Supp. 1995); *Kilburn*, 849 S.W.2d at 812; *Ramirez*, 865 S.W.2d at 582. We do not address the trial court's denial of summary judgment of the County's sovereign immunity defense against appellees' claims arising out of the County's performance of a governmental

---

1. The following documents were attached to appellants' joint motion for summary judgment: 1) a copy of the original transcript of witness testimony and other court documents from *The State of Texas v. Jose Bernardo Jimenez*, No. 89–CR–1060–A (107th Dist.Ct., Cameron County, Tex., May 20, 1990); 2) copies of the depositions of Officer Flores and Lt. Gavito; 3) the affidavit of Gabriel Martinez, a witness to the accident; 4) the confession of Jose Bernardo Jimenez; 5) the affidavit of Jorge Delgado, the arresting officer; 6) the affidavits of David Salmon and John Sexton; and 7) the affidavits of Patrick Russell and Lisa M. Mount.

2. "Qualified immunity" is one of several interchangeable terms (including "quasi-judicial immunity," "discretionary immunity," "official immunity," and "good faith immunity") used to refer to an affirmative defense available for governmental employees sued in their individual capacities. *City of Mission v. Ramirez*, 865 S.W.2d 579, 582 n. 1 (Tex.App.—Corpus Christi 1993, no writ); *see Travis v. City of Mesquite*, 830 S.W.2d 94, 100–01 n. 2 (Tex.1992) (Cornyn, J., concurring).

function or from the County's method of providing police protection because we do not have authority to do so.

A motion for summary judgment must expressly state the grounds upon which it is made. *McConnell v. Southside Sch. Dist.,* 858 S.W.2d 337, 339 (Tex.1993); TEX. R.CIV.P. 166a(c). Summary judgments may not be affirmed or reversed on grounds not expressly set forth in the motions presented to the trial court. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 677 (Tex. 1979); *Carlisle v. Philip Morris, Inc.,* 805 S.W.2d 498, 518 (Tex.App.—Austin 1991, writ denied); *Dhillon v. General Accident Ins. Co.,* 789 S.W.2d 293, 295 (Tex.App.—Houston [1st Dist.] 1990, no writ). *See Ramirez,* 865 S.W.2d at 581. A motion for summary judgment must stand or fall on the grounds expressly presented in the motion, and a court may not rely on briefs or summary judgment evidence in determining whether grounds are expressly presented. *McConnell,* 858 S.W.2d at 339. However, a non-movant does not need to respond to a motion for summary judgment to complain on appeal that the motion was insufficient as a matter of law to support summary judgment. *Clear Creek Basin Auth.,* 589 S.W.2d at 678.

The proper inquiry on appeal is whether the defendant, in seeking summary judgment, fulfilled his initial burden 1) to establish as a matter of law that there remains no genuine issue of material fact as to one or more essential elements of the plaintiff's cause of action or 2) to establish his affirmative defense to the plaintiff's cause of action as a matter of law. *Casso v. Brand,* 776 S.W.2d 551, 556 (Tex.1989); *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985); *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex.1972). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant must be taken as true. *Nixon,* 690 S.W.2d at 549. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in his favor. *Id.* Once the movant establishes an affirmative defense which would bar the suit as a matter of law, the non-movant must then produce summary judgment proof raising a fact issue in avoidance of the affirmative defense. *Gonzalez v. City of Harlingen,* 814 S.W.2d 109, 112 (Tex. App.—Corpus Christi 1991, writ denied).

Official or qualified immunity is an affirmative defense. *City of Lancaster v. Chambers,* 883 S.W.2d 650, 653 (Tex.1994) (citing *Perry v. Texas A & I Univ.,* 737 S.W.2d 106, 110 (Tex.App.—Corpus Christi 1987, writ ref'd n.r.e.)); *Boozier v. Hambrick,* 846 S.W.2d 593, 597 (Tex.App.—Houston [1st Dist.] 1993, no writ). When seeking summary judgment on an affirmative defense, the burden is on the defendant to establish all essential elements of the defense. *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–311 (Tex.1984). No disputed question of material fact can remain on the affirmative defense. *Black v. Victoria Lloyds Ins. Co.,* 797 S.W.2d 20, 27 (Tex.1990).

Police officers are entitled to official immunity from suits arising from the performance of their 1) discretionary duties 2) in good faith as long as they are 3) acting within the scope of their authority. *Chambers,* 883 S.W.2d at 653; *City of Dallas v. Half Price Books, Records, Magazines, Inc.,* 883 S.W.2d 374, 376 (Tex.App.—Dallas 1994, n.w.h.); *Edgar v. Plummer,* 845 S.W.2d 452, 453–54 (Tex.App.—Texarkana 1993, no writ). If a police officer is immune from tort liability under the qualified immunity doctrine, the county is also immune. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 101.021(1)(B) (Vernon 1986).

On appeal, we must determine whether the summary judgment evidence proves that Gavito and Flores are entitled to official immunity as a matter of law, *i.e.,* whether the evidence shows that they were performing a discretionary function, acting in good faith, and within the scope of their authority. Appellees concede that Gavito's and Flores' actions involved discretionary duties performed within the scope of their authority. After reviewing the evidence, we conclude that appellants Flores and Gavito were performing a discretionary function within the scope of their authority. Thus, the disputed issue is whether appellants sufficiently proved the element of "good faith" as a matter of law.

The parties have tried to apply the supreme court's test for the "good faith" element of official immunity in *Chambers* to the facts of this case. In *Chambers,* the supreme court stated that a police officer acts in good faith in a high speed chase if

> a reasonably prudent officer, under the same or similar circumstances, *could have believed* that the need to immediately apprehend the suspect outweighed a clear risk of harm to the public in continuing the pursuit. (emphasis added)

*Chambers,* 883 S.W.2d at 656. The "could have believed" aspect of the good faith test means that, in order to be entitled to summary judgment, a police officer must prove that a reasonably prudent officer might have believed that the pursuit should have been continued. *Id.* at 656–57. The officer need not prove that it would have been unreasonable to stop the pursuit or that all reasonably prudent officers would have continued the pursuit. *Id.* at 657. Immunity should be recognized if officers of reasonable competence could disagree on this issue. *Id.* (citing *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986)); *see Schultea v. Wood,* 27 F.3d 1112, 1120 (5th Cir.1994); *White v. Taylor,* 959 F.2d 539, 544 (5th Cir.1992).

The *Chambers* good faith test sets an elevated standard of proof for a nonmovant seeking to defeat a claim of official immunity in response to a motion for summary judgment.

> To controvert the officer's summary judgment proof on good faith, the plaintiff must do more than show that a reasonably prudent officer could have decided to stop the pursuit; the plaintiff must show that "no reasonable person in the defendant's position could have thought the facts were such that they justified defendant's acts." (citations omitted)

*Chambers,* 883 S.W.2d at 656. The *Chambers* court adopted the objective reasonableness requirement applied by the federal courts in an immunity analysis. *See id.* at 657 n. 8.

Appellees attack the evidence supporting appellants' motion for summary judgment, contending that the affidavits of Flores, Gavito, Sexton and Salmon fail to satisfy the good faith standard established in *Chambers.* Specifically, appellees contend that the affidavits of Flores and Gavito offered purely subjective conclusions about their actions. Each officer's affidavit first describes in detail the officer's respective actions taken after receiving the dispatch and during the pursuit of Jimenez in the stolen vehicle. The affidavit of Flores concludes with the following statement:

> A full abandonment of the pursuit and removal of any warning lights and sirens from my squad car could have placed third party citizens at an increased risk without any warning whatsoever. I believe my approach to continuing the pursuit by merely maintaining visual contact with Jimenez was reasonable.

The affidavit of Gavito concludes with the following similar statement:

> I believe my actions were prudent and reasonable. A full abandonment of the pursuit and removal of any warning lights and siren from my unmarked car could have placed third party citizens at an increased risk without any warning whatsoever.

Appellees contend that these statements do not meet the good faith standard because they are purely subjective statements of good faith. Appellees argue that, although Flores and Gavito state their belief that their actions were prudent and reasonable, they do not do so according to an objective standard of what a reasonably prudent officer could have believed under the same or similar circumstances. Moreover, appellees argue, the affidavits do not include any reference to the need to immediately apprehend the suspect as outweighing a clear risk of harm to the public in continuing the pursuit. Appellees assert that the "risk of harm" element incorporated into the good faith standard is the risk of harm to the public in *continuing* the pursuit, and that the only risk of harm referred to in the affidavits is an increased risk from *abandoning* the pursuit.

We agree that the affidavits of Flores and Gavito fail to establish the element of good faith as a matter of law. Nei-

ther affidavit states whether a "reasonably prudent officer, under the same or similar circumstances, could have believed that" the officers' actions were justified. We do not suggest that these are "magic words" and that an affidavit must contain such language. The evidence need only show, by applying an "objective" approach, that a reasonably prudent officer might have believed that the pursuit should have been continued.

We next turn to the remaining summary judgment evidence to determine whether there is *any* evidence which would establish that a reasonably prudent officer, under the same or similar circumstances, could have believed that the need to immediately apprehend the suspect outweighed a clear risk of harm to the public in continuing the pursuit.

■ After reviewing the affidavit of David Salmon, we conclude that it does not establish that a reasonably prudent officer, under the same or similar circumstances, could have believed that Flores' actions or Gavito's actions were justified. Salmon merely opined that "Officer Flores and Lieutenant Gavito exercised reasonable discretion and judgment" by their conduct and decision-making and that "Officer Flores' decisions appear reasonable and well-balanced under the circumstances." Salmon gave no opinion concerning what a "reasonably prudent officer" could have believed about either officers' conduct.

■ Similarly, the affidavit of John Sexton does not establish that Flores or Gavito met the objective "reasonably prudent officer" standard. Sexton opined that Flores and Gavito acted reasonably and that their course of action was within reason and consistent with police procedure. Sexton did state, "I believe that any police officer, given the same situation, could have reasonably decided on the same course of action." We believe this statement alone is insufficient under the *Chambers* good faith test.

We hold that the expert testimony offered by Salmon and Sexton does not support a conclusion that a reasonably prudent officer, under the same or similar circumstances, could have believed that the pursuit should have continued and that appellants' actions in continuing the pursuit were reasonable and justified. After a thorough review of the evidence, we conclude that the officers failed to satisfy the good faith test under *Chambers*.

■ Even if we were to hold that Flores and Gavito sufficiently proved that a reasonably prudent officer might have believed that their actions were justified and that the pursuit should have been continued, we would hold that appellees successfully controverted the deputies' proof of good faith by presenting the opinions and testimony of Earl Morris, an expert on proper police procedure. Appellees attached Morris' affidavit, excerpts from his deposition taken on August 15, 1994, and his "Initial Summary Report," dated September 23, 1993, to their response to the motion for summary judgment. Morris opined "that a reasonable official could not have believed that [Flores' and Gavito's] conduct was reasonable and acceptable" and that the risk of harm to the public clearly outweighed the need to apprehend the suspect.

We hold that the trial court did not err in denying appellants' motion for summary judgment. We overrule appellants' three points of error.

We affirm the trial court's order denying appellants' motion for summary judgment. We remand the case to the trial court for further proceedings.