**Brenda Geannine HEIKKILA and Elwood David Heikkila, Appellants,**

v.

**HARRIS COUNTY, Appellee.**

No. 12–97–00269–CV.

Court of Appeals of Texas, Tyler.

May 29, 1998.

Robert E. Lapin, Houston, for appellants.

Frank E. Sanders, Houston, for appellee.

Before RAMEY, C.J., HOLCOMB, J., and BILL BASS, Retired Justice, Twelfth Court of Appeals, Tyler, sitting by assignment.

BILL BASS, Justice (Retired).

This is an appeal of a summary judgment in favor of Harris County in a suit brought under the Texas Tort Claims Act. TEX. CIV. PRAC. & REM.CODE ANN. § 101.002 (Vernon 1997). Harris County presented one ground for summary judgment in its motion: that it retained sovereign immunity, because its employee was entitled to official immunity. We affirm the judgment of the trial court.

On May 1, 1993, two boys died in a fire in Ft. Bend County, their charred bodies burned beyond recognition. The investigating officers from the Ft. Bend Sheriff's Department learned that the bodies were probably those of David Heikkila and Christopher Worthy. They also learned that Heikkila had taken a cold medicine, Thera Flu, shortly before his death. The Sheriff's officers gathered and segregated the remains, placed them in two containers, and on the order of the Justice of the Peace, delivered the remains to a local funeral home who delivered them to the Harris County Medical Examiner's Office for identification and for autopsies to determine the cause of death. The Harris County Medical Examiner's Office had contracted to perform autopsies for Ft. Bend County.

The autopsies were performed by Dr. Aurelio Espinola, the Assistant Harris County Medical Examiner. Dr. Espinola suggested DNA testing but decided to attempt identification of the bodies based on dental records. Ft. Bend officers found no dental records for Heikkila, but Worthy's records had been delivered to the medical examiner with the two sets of remains. Using Worthy's dental records, and with the help of Worthy's dentist, one body was identified as Worthy's. Dr. Espinola concluded that the other body was Heikkila, and he reported his findings and conclusions to the Ft. Bend Sheriff's Department.

However, the Sheriff's Department was not satisfied that the other body had to be Heikkila's, and arranged for DNA testing of the bodies. On May 7, two bone samples from each body were delivered to the Baylor College of Medicine for DNA testing.

The Ft. Bend Sheriff's Department received the toxicology reports on the two bodies on May 21. The report showed the presence of pseudoephedrine in the body identified by dental records as Worthy's. Deputy Hargrave learned that pseudoephedrine is a common ingredient of cold and flu medicines. He alerted the Harris County Medical Examiner's Office that Heikkila had taken cold medicine shortly before his death, and that the pseudoephedrine should have been found in Heikkila's body and not Worthy's. Later that same day, Dr. Espinola authorized the release to Worthy's mother of the body identified by dental records as Worthys, but which contained the pseudoephedrine expected to be found in Heikkila's body. Worthy's mother promptly had the remains cremated.

Three days later, the DNA testing revealed that the body believed to be Heikkila's could not be the child of the Heikkilas, and

that the body first identified as Worthy's could not be excluded as a child of the Heikkilas.

It is probable that in gathering and segregating the teeth and pieces of jaw and teeth belonging to Worthy had been placed in the container with Heikkila's remains. The Heikkila's suit alleges that the negligent premature release of their sons remains to Worthy's mother prevented the burial of their son's body in the manner they would have wanted and caused them severe mental anguish. Harris County moved for summary judgment claiming sovereign immunity resulting from Dr. Espinola's official immunity.

■■■ A summary judgment will be affirmed only if the record establishes that the movant has conclusively proven all the elements of the movant's cause of action or defense as a matter of law. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). In determining whether a fact issue exists preventing proof as a matter of law, the appellate court must view the evidence and reasonable inferences therefrom in the light most favorable to the nonmovant. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965). Sovereign immunity is an affirmative defense. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex.1994). A governmental unit of the State retains its sovereign immunity if the employee whose conduct is in question is entitled to official immunity (sometimes called quasi-judicial immunity). *DeWitt v. Harris County*, 904 S.W.2d 650 (Tex.1995). Official immunity inures to all government employees (1) in the performance of discretionary functions, (2) in good faith, and (3) within their authority. *City of Lancaster v. Chambers*, 883 S.W.2d at 653.

Appellants first contend that Harris County's summary judgment proof did not establish the official immunity of all the Harris County officials involved in the negligent release of David Heikkila's body to Christopher Worthy's parents. In a companion case, *Ft. Bend County v. Heikkila*, 921 S.W.2d 395 (Tex.App.—Houston [1st Dist.] 1996, no writ) the First Court of Appeals upheld the trial court's interlocutory order denying Ft. Bend County's motion for summary judgment. The Court of Appeals observed that the Heikkila's petition did not allege negligence by any specific employee, but asserted simply that "Decedent's remains were negligently released to a family unrelated to the plaintiff." The Houston Court of Appeals said that confronted with such an imprecise pleading:

> [i]t was necessary for Fort Bend County either to specially except to the vagueness of the Heikkilas' petition in order to determine which employees were alleged negligent (and then prove that those employees are entitled to official immunity) or to present evidence that each employee connected with the release of David Heikkila's remains was entitled to official immunity.

*Ft. Bend County*, 921 S.W.2d at 398. Ft. Bend County's summary judgment evidence consisted of the affidavit of its chief deputy sheriff addressing generally the actions of all the sheriff's department personnel. Since such a general affidavit failed to establish that each employee connected with the events was entitled to official immunity, the First Court of Appeals said denial of summary judgment was proper.

Appellants argue that the instant case and the *Ft. Bend County* case are similar in that their petition did not name any specific employee, and Harris County presented no evidence that every Harris County employee involved was entitled to official immunity. Harris County's motion, they insist, deals exclusively with the conduct of Dr. Espinola, the pathologist who performed the autopsies.

■■ We disagree with Appellant's argument. The affidavits and deposition that constitute Harris County's summary judgment proof identified Dr. Espinola as the person who was solely responsible for the conduct of the autopsies, who made the initial identification of the bodies and who authorized and permitted the release of David Heikkila's body to the Worthy family. Moreover, Appellant's summary judgment response contained deposition excerpts supporting the view that if there was a negligent misidentification and release of David Heikkila's body, it was solely the responsibility of

Dr. Espinola. An employee of the Harris County Medical Examiner's office testified that the case was "Dr. Espinola's from front to back." "[T]his information, this autopsy, this examination was done by Dr. Espinola." Appellant's summary judgment proofs identify Dr. Espinola as the person who authorized release of the body, despite being alerted to the possibility of misidentification by the Ft. Bend deputy sheriff's report that shortly before his death David Heikkila had taken a cold medicine containing pseudoephedrine, and that therefore his body not Christopher Worthys should have contained pseudoephedrine. We conclude that the instant case differs from the *Ft. Bend County* case in that Harris County had identified their employee whose conduct could have caused the release of David Heikkila's body to Christopher Worthy's mother. Appellant's reliance on the holding in *Ft. Bend* is misplaced.

■ Next, Appellants complain that Harris County has not proven that its employees are entitled to official immunity. To be entitled to summary judgment, Harris County must prove that the employee or employees concerned possessed official immunity because they were performing a(1) discretionary duty, (2) in good faith, and (3) within the scope of their authority. *City of Lancaster*, 883 S.W.2d at 653. Medical examiners who can satisfy these three elements "enjoy the same official immunity as other public officials." *Putthoff v. Ancrum*, 934 S.W.2d 164 (Tex.App.—Fort Worth 1996, writ denied).

■ Appellant concedes that Dr. Espinola was performing a discretionary function. It is evident that in investigating the cause of death and attempting to identify the remains, Dr. Espinola had to determine facts, draw conclusions, make decisions and act accordingly. A state employee who "is required to pass on facts and determine his actions by the facts found is performing duties that are 'quasi-judicial' in nature and are discretionary." *Lazaro v. University of Texas*, 830 S.W.2d 330, 332 (Tex.App.—Houston [14th Dist.] 1992, writ denied).

■ However, Appellants insist that Harris County has not proven Dr. Espinola's "good faith" as a matter of law. The ele-

ment of good faith is satisfied when it is shown that a reasonably prudent person in the same or similar circumstances would have taken the same actions. *City of Houston v. Newsom*, 858 S.W.2d 14, 18 (Tex. App.—Houston [14th Dist.] 1993, no writ). The affidavits of Dr. Espinola and the Chief Medical Examiner Dr. Jachimczyk both testify to the procedure used in the identification of the bodies and the release of David Heikkila's remains. Both affidavits state that a reasonable and prudent medical examiner faced with the same or similar situation would have acted as Dr. Espinola. In order to controvert such summary judgment proof, it was incumbent on the Appellants to do more than show that a reasonable and prudent person would not have taken the same action; "the plaintiff must show that '*no* reasonable person in the defendant's position could have thought the facts were such that they justified defendant's acts.'" *City of Lancaster*, 883 S.W.2d at 657. Appellants' summary judgment response contained no such proof. Instead Appellants argue that while perhaps acting initially in good faith in making the identifications from dental records Dr. Espinola no longer acted in good faith when he negligently disregarded evidence indicating an error in his first identifications. But negligence does not deprive a public employee of official immunity. As the Supreme Court observed in *City of Lancaster*,

> If public officials perform their duties without negligence, they do not need immunity. The complex policy judgment reflected by the doctrine of official immunity, if it is to mean anything, protects officers from suit even if they acted negligently.

883 S.W.2d at 655.

■ Appellant also argues that the affidavits of Drs. Espinola and Jachimczyk are subjective and self serving and therefore insufficient proof of good faith. Citing *Murillo v. Garza*, 904 S.W.2d 688, 690 (Tex.App.—San Antonio 1995, writ denied); *Cameron County v. Alvarado*, 900 S.W.2d 874, 880 (Tex.App.—Corpus Christi 1995, writ dism'd w.o.j.). However, in our opinion the affidavits of Drs. Espinola and Jachimczyk are not subject to the objections raised in the cases

Appellant cites. In *Murillo*, Murillo's affidavit in support of his motion for summary judgment simply set out his qualifications and stated that he had always carried out his duties in the subjective good faith belief that he was making the best decision about a given traffic engineering problem. The officers' affidavits found infirm in *Cameron County* set out facts, but offered their own purely subjective conclusions about the reasonableness of their conduct.

In contrast, the challenged affidavits in the instant case contain a factual summary of Dr. Espinola's actions, but also measure his conduct against the "objective" standard prescribed by *City of Lancaster*: that of a reasonably prudent medical examiner, acting under the same or similar circumstances.

Summary judgment proof consisting of a government employee's own affidavit was held sufficient in *City of Beverly Hills v. Guevara*, 911 S.W.2d 901, 904 (Tex.App.—Waco 1995, no writ); *City of Houston v. Newsom*, 858 S.W.2d 14, 18 (Tex.App.—Houston [14th Dist.] 1994, no writ); *Ervin v. James*, 874 S.W.2d 713, 716 (Tex.App.—Houston [14th Dist.] 1994, writ denied); *City of Columbus v. Barnstone*, 921 S.W.2d 268 (Tex.App.—Houston [1st Dist.] 1995, no writ). We conclude that Dr. Espinola's good faith was proven as a matter of law.

The affidavits also establish as a matter of law that Dr. Espinola was acting within the scope of his authority. This is undisputed.

█ The summary judgment evidence establishes as a matter of law that Dr. Espinola was performing a discretionary function in good faith within the scope of his authority and that he is therefore entitled to official immunity. Harris County is not liable under Section 101.021(2) of the Texas Tort Claims Act for the negligence of its employee when the employee has no liability because of official immunity. *See DeWitt v. Harris County*, 904 S.W.2d at 654.

The judgment is affirmed.